A91A1485. CHANDLER v. KOENIG et al.
(417 SE2d 715)

SOGNIER, Chief Judge.

Terrie Jo Chandler brought a medical malpractice suit against Ronald Koenig, M.D., Mark Kozinn, M.D., and The Atlanta Neurological Institute, P.C. Pursuant to OCGA § 9-11-9.1 (a), she submitted the affidavit of Jerry Buccafusco, Ph.D., Professor of Pharmacology and Toxicology at the Medical College of Georgia. All defendants raised as a defense the failure of Chandler to comply with OCGA § 9-

11-9.1, and the trial court granted their motion to dismiss based on that defense. Chandler appeals.

OCGA § 9-11-9.1 (a) provides that "[i]n any action for damages alleging professional malpractice, the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." The question in this appeal is who is "an expert competent to testify" for purposes of OCGA § 9-11-9.1 (a).

We hold that for an affiant to constitute "an expert competent to testify" under OCGA § 9-11-9.1 (a), the affiant's expertise must include knowledge of the standard of care applicable to the defendant-physician as to at least one of the matters on which the plaintiff's malpractice claim is based. This holding is mandated by the language of the statute that the expert affidavit submitted by the plaintiff must specifically set forth "at least one negligent act or omission" allegedly committed by the defendant-physician. To support a claim of medical malpractice, any such "negligent act or omission" must have been the result of the defendant-physician's breach of a duty owed the plaintiff-patient by failing to exercise the requisite degree of skill and care. *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200-201 (1) (345 SE2d 904) (1986). See *McDaniel v. Hendrix*, 260 Ga. 857, 859 (1) (401 SE2d 260) (1991). Since an affiant whose expertise does not encompass the standard of care applicable to the defendant-physician in the performance of one of the challenged acts or omissions does not possess the knowledge to opine whether malpractice existed in the defendant-physician's performance, as alleged by the plaintiff, such an affiant would not qualify as an "expert competent to testify" under OCGA § 9-11-9.1 (a).

Our interpretation is consistent with opinions holding that the mere fact an affiant is an expert in his or her school of knowledge does not necessarily mean the expert is "competent to testify" under OCGA § 9-11-9.1 (a). See *Piedmont Hosp. v. Milton*, 189 Ga. App. 563 (377 SE2d 198) (1988) (rejecting a medical doctor's affidavit against nursing personnel in part because it did not show that the medical doctor was an expert competent to testify "in the field of nursing"); *Milligan v. Manno*, 197 Ga. App. 171 (397 SE2d 713) (1990) (setting forth the general rule that a member of a school of practice other than that to which the defendant belongs is not competent to testify as an expert in a malpractice case). This result is also in accord with our opinion in *0-1 Doctors &c. Co. v. Moore*, 190 Ga. App. 286 (378 SE2d 708) (1989), in which we interpreted OCGA § 9-11-9.1 to mean that when the affiant is "competent to testify," there is no need to set forth in the affidavit the standard of care or the expert affiant's familiarity with the standard of care to fulfill the re-

quirements of OCGA § 9-11-9.1 (a). *0-1 Doctors*, supra at 287.

In *Milligan*, supra, this court discussed in the context of the OCGA § 9-11-9.1 affidavit the general rule excluding practitioners of one school of medicine from testifying against members of other schools and the exception to that rule, as set forth in *Sandford v. Howard*, 161 Ga. App. 495, 497 (5) (288 SE2d 739) (1982), that " '[w]here there is proof by competent evidence that the methods of treatment are the same despite the difference in the nomenclature of the schools involved, the witness is competent to testify.' [Cit.]" The *Milligan* court then applied that exception to the affidavit required by OCGA § 9-11-9.1 and held that where the affidavit "establishes that the witness is a member of a different school of medicine than that practiced by the defendant but contains no evidence that the methods of treatment of plaintiff's condition are the same so as to bring the witness within the exception to the general rule that he is incompetent to testify[, then] the affidavit is legally insufficient." Id. at 172. We find no conflict between *Milligan* and our holding in *0-1 Doctors &c.*, supra, because *0-1 Doctors &c.* is distinguishable on the basis that it involved an expert affiant who was a member of the same school of medicine as that practiced by the defendant-physicians.

The general rule and its exception, as discussed in *Milligan*, supra, are addressed to and have been applied only in cases involving expert witnesses in health care professions who treat patients.[1] Likewise, *McCormick v. Avret*, 154 Ga. App. 178, 179 (267 SE2d 759) (1980), cited by the dissent, involved testimony by one health care professional (a licensed nurse) against another (a medical doctor), and thus is consistent with (though not referencing) the general rule and its exception. In the case sub judice, it is uncontroverted that appellant's expert, Dr. Buccafusco, is a pharmacologist, not a licensed practitioner of any school of medicine or a licensed practitioner of any related field, such as pharmacy. However, we need not here determine whether affiants such as Dr. Buccafusco who are not licensed professionals in the health care field are competent to testify to the *standard of care* of defendants who are practicing licensed health care professionals, because even assuming, arguendo, that a pharmacologist can derive from education and training the knowledge sufficient to render him an expert on the standard of care required of a medical doctor, the facts as set forth in the affidavit of appellant's expert are insufficient to establish his expertise on this subject.

---

[1] E.g., *Milligan*, supra (affidavit by osteopathic physician submitted in suit against allopathic physician); *Hicks v. Mauldin*, 190 Ga. App. 660, 661-662 (4) (379 SE2d 806) (1989) (osteopathic pediatrician testified against allopathic general practitioner); *Bethea v. Smith*, 176 Ga. App. 467, 468-470 (2) (336 SE2d 295) (1985) (affidavit by podiatrist against orthopedic surgeon); *Sandford*, supra (orthopedist's testimony against podiatrist).

In his affidavit Dr. Buccafusco set forth his fields of specialty, the scientific and professional societies to which he is a member, and averred that he trains medical students and postgraduates in regard to the properties and interactions of drugs as part of his duties as a professor of pharmacology at MCG. Dr. Buccafusco also opined that he was "familiar [with the] standard of care required and the properties and interactions of the drugs prescribed to [appellee] by [appellants] and with their recommended use" and was "competent to testify regarding the standards of care and recommended use" of those drugs. However, "[c]ompetency as an expert is not demonstrated by mere familiarity. During the course of one's education, training, or experience as a [pharmacologist], it is possible to become 'familiar' with the standard of care and treatment generally employed by [medical doctors]. Such familiarity would not, however, qualify one as an expert in that regard. An expert witness is one who through education, training, or experience has peculiar knowledge concerning some matter of science or skill to which his testimony relates. Absent some evidence to show that the affiant's education, training, or experience *as a [pharmacologist]* would likewise demonstrate his *similar* expert qualifications as to [the prescribing of drugs by a medical doctor], the 'exception' in [*Milligan,* supra] would not be shown." (Citations and punctuation omitted.) *Bethea v. Smith,* 176 Ga. App. 467, 469 (336 SE2d 295) (1985).

Dr. Buccafusco's affidavit establishes that he is an internationally recognized pharmacologist and possesses expertise in that area which probably far exceeds that of the average medical doctor. However, other than Dr. Buccafusco's bare assertion that he is familiar with the applicable standard of care, nothing in Dr. Buccafusco's affidavit explains how his pharmacological education or his professorial duties has provided him with expert knowledge of the standard of care in the prescribing of drugs ordinarily employed throughout the general medical profession by physicians who are years removed from the intensive pharmacological training they received in medical school and for whom the prescribing of drugs is but one facet of their practice. *Bethea,* supra. Because there is *no* showing of a professional overlap of expertise in at least one matter alleged by appellant to constitute malpractice, compare *McCormick,* supra at 179, Dr. Buccafusco could not come within the exception to the general rule that he is incompetent to testify. *Milligan,* supra at 172. Therefore, appellant's affidavit did not meet the requirement of OCGA § 9-11-9.1 (a), and the trial court did not err by granting appellees' motion to dismiss.

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Carley, P. J., and Johnson, J., concur. Pope, Beasley, Cooper and Andrews, JJ., dissent.*

ANDREWS, Judge, dissenting.

Chandler's expert affiant was not a medical doctor, but a pharmacologist. OCGA § 9-11-9.1 (a) sets forth a pleading requirement which provides that: "In any action for damages alleging professional malpractice, the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim."

In determining whether the pharmacologist's affidavit satisfied this requirement, the allegations of the complaint must first be examined. In count one, the complaint alleges that, given Chandler's physical and mental condition and prior medical history, the defendants negligently prescribed various drugs and combinations thereof, failed to recognize and warn her of risks associated with the drugs, and failed to properly monitor her reactions to the drugs. As a result, the complaint alleges she suffered a life-threatening reaction culminating in respiratory arrest and coma, and that she suffers from continuing effects physically and mentally. Count two alleges the same negligent acts and omissions, but is characterized as a breach of implied contract claim.

The affidavit of Chandler's expert indicates that he holds a doctoral degree and is a professor of pharmacology and toxicology at the Medical College of Georgia. He has written and been published extensively in various scientific books and periodicals concerning his field of specialty in neuropharmacology and the pharmacology of drugs of abuse. His duties at the Medical College include training medical students and postgraduates in this area. Judicial notice may be taken of the general agreement of medical authorities as to the definition of pharmacology. *Genesco, Inc. v. Greeson*, 105 Ga. App. 798, 800-801 (125 SE2d 786) (1962) (doctrine of judicial notice utilized in ruling on demurrer where no conflict as to medical definition). The 25th edition of Dorland's Illustrated Medical Dictionary defines pharmacology as "the science which deals with the study of the action of drugs on living systems," while the Sloane-Dorland Annotated Medical-Legal Dictionary (1987 ed.) defines it as "the science that deals with the origin, nature, chemistry, effects, and uses of drugs; it includes pharmacognosy, pharmacokinetics, pharmacodynamcis, pharmacotherapeutics, and toxicology."

In his affidavit, the plaintiff's expert pharmacologist states that he is familiar with the properties, interactions and recommended use of the drugs prescribed to the plaintiff and with the standard of care required in the prescription of these drugs. He expressly states that he is "familiar with the . . . standard of care required . . . by the defendants" in regard to the prescription of such drugs. He states that based on information he obtained by reviewing the plaintiff's

medical records and the allegations of the complaint it was his opinion that the defendants deviated from the required standard of care by prescribing the following drugs to the plaintiff: (1) prescribing Elavil and Midrin in combination to a patient with a history of cardiovascular problems without cardiovascular monitoring; (2) prescribing Elavil to a patient with a history of alcohol abuse and mental problems, without warning the patient of the danger of consuming alcohol while taking Elavil; and, (3) prescribing Fiorinal in combination with Elavil to a patient with such a history. In short, the pharmacologist stated that, given the plaintiff's history, the drugs prescribed were inappropriate, especially when given without appropriate warnings and monitoring, and that this caused the injury. In giving the affidavit the expert is not required to demonstrate personal knowledge of the facts, but may base the opinion on an assumption that facts in the medical record or factual allegations in the complaint are true. *Druckman v. Ethridge*, 198 Ga. App. 321, 322 (401 SE2d 336) (1991).

OCGA § 9-11-9.1 (a) does not require that the affidavit address the issue of causation, but only that an expert competent to testify give the factual basis for at least one negligent act or omission of the defendant claimed in the complaint. *0-1 Doctors Memorial Holding &c. v. Moore*, 190 Ga. App. 286, 288 (378 SE2d 708) (1989); *Candler Gen. Hosp. v. Lamb*, 200 Ga. App. 314, 317 (408 SE2d 416) (1991) (Pope, J., concurring specially), rev'd on other grounds, 262 Ga. 70 (413 SE2d 720) (1992). The affidavit is insufficient if it fails to show that the expert is competent to testify in the case as to at least one alleged negligent act or omission of the defendants. *Milligan v. Manno*, 197 Ga. App. 171, 172 (397 SE2d 713) (1990); *Piedmont Hosp. v. Milton*, 189 Ga. App. 563, 564 (377 SE2d 198) (1988). "Generally speaking, nothing more is required to qualify a witness as an expert than to show that, through education, training, or experience he has special knowledge concerning the matter of science or skill to which his testimony relates." *Queen v. McDaniel*, 178 Ga. App. 504, 505 (343 SE2d 783) (1986). Although "[o]rdinarily, only a medical doctor has the training and experience necessary to provide meaningful testimony on the question of due care in a medical malpractice case," non-physician experts may be competent to testify where their expertise clearly overlaps with a physician on the standard of care at issue. *McCormick v. Avret*, 154 Ga. App. 178, 179 (267 SE2d 759) (1980). For example, in *McCormick*, supra at 179 the court concluded in a medical malpractice case that a nurse whose expertise on the procedure at issue overlapped with that of a physician, was qualified "to testify as to the standard of reasonable care in keeping sterile a hypodermic needle used to draw blood from a patient." However, the court emphasized that the testimony was not offered on issues beyond the

expertise of a nurse to establish the standard of care in the drawing of blood or in the diagnosis or treatment of an illness or injury. Id. at 179. " 'Medical experts are persons possessing technical and peculiar knowledge, and any person learned in medical or physiological matters is qualified to testify as an expert thereon, even though he is not a medical practitioner." (Punctuation and citation omitted.) *Avret v. McCormick*, 246 Ga. 401 (271 SE2d 832) (1980). Of course, with respect to matters exclusively within the professional expertise of medical doctors, it follows that one who is not a physician is not competent to testify.

The narrow issue presented here is whether the complaint is subject to dismissal for failure to state a claim because the affidavit fails to show that the pharmacologist is competent to testify in this case to at least one negligent act or omission of the defendants alleged in the complaint. *Milligan*, supra at 172. As to the competency of the expert, the underlying issue is whether the acknowledged expertise of the pharmacologist on the action, effects and uses of drugs overlaps in this case with the expertise of a medical doctor on at least one alleged negligent act or omission.

In medical and other professional malpractice claims, a negligent act or omission is demonstrated by showing that there was a deviation from the general standard of care employed by others in the profession under like circumstances. *Razete v. Preferred Research*, 197 Ga. App. 69, 70 (397 SE2d 489) (1990). The gravamen of the present action is that, given the plaintiff's condition, the defendant doctors negligently prescribed various drugs. After a physician diagnoses the medical condition of a patient, at least part of the medical treatment applied by the physician may be the prescription of drugs to the patient. Pharmacologists do not possess the medical expertise to diagnose or treat patients. By definition, pharmacology encompasses a body of scientific knowledge regarding the action, uses and effects of drugs on the human body. The affidavit demonstrates that the pharmacologist is an expert possessing scientific or technical knowledge which overlaps in a specific area with that of medical doctors as to the uses of drugs and their effects on the human body. Accordingly, when medical doctors prescribe drugs for a patient to use, the standard of medical care applying to this aspect of the patient's treatment arises from the same body of scientific knowledge which is the basis of the pharmacologist's expertise. The fact that the pharmacologist's expertise may be based solely on education and training, and does not extend to other aspects of diagnosis and treatment of patients, does not render the pharmacologist less qualified to give an opinion in the specific area of his expertise. See *Dimambro Northend Assoc. v. Williams*, 169 Ga. App. 219, 220 (312 SE2d 386) (1983). He may base his opinion on hypothetical facts regarding the medical condition of the

patient when the drugs were prescribed. *Druckman*, supra at 322.

In diagnosing and treating patients, medical doctors use not only their scientific knowledge, but also employ skills which are exclusively within the scope of their expertise. *Smith v. Hosp. Auth.*, 161 Ga. App. 657, 660 (288 SE2d 715) (1982). However, in some cases a specific allegation of medical malpractice may involve only a standard of care lying wholly within an area of expertise mutually shared by physicians with a non-physician. See *Avret*, supra at 401 (nurse qualified to testify in medical malpractice case to establish medical standard of care in keeping needle sterile because expertise of nurses and doctors wholly overlapped on standard of care at issue); *Bethea v. Smith*, 176 Ga. App. 467, 470 (336 SE2d 295) (1985) (discussing non-physician's overlapping expertise with medical doctor on specific standard of medical care). It follows that the pharmacologist would be competent to testify in this case that the physicians negligently deviated from a standard of medical care if the evidence shows that a specific standard at issue is based not in part but wholly on a body of scientific knowledge which forms the mutual basis of the pharmacologist's and physicians' expertise.[2]

OCGA § 9-11-9.1 has been construed as an exception to the liberal pleading requirements of the Civil Practice Act. *0-1 Doctors*, supra at 288; *Brake v. Mintz*, 193 Ga. App. 662, 667 (388 SE2d 715) (1989). In order to satisfy the requirement that the affidavit be given by "an expert competent to testify" the affidavit must contain allegations showing the affiant is competent to testify as to at least one

---

[2] Whether a pharmacologist or similar expert is competent to testify in a medical malpractice action that a physician deviated from the standard of medical care in the prescription and use of drugs has been variously decided in other jurisdictions. See *Garvey v. O'Donoghue*, 530 A2d 1141, 1146-1147 (D.C. App. 1987) (pharmacologist competent to testify as to standard of care in medical malpractice action alleging negligent prescription of drug); *Thompson v. Carter*, 518 S2d 609, 613-615 (Miss. 1987) (pharmacologist/toxicologist qualified to testify in medical malpractice action as to medical standard of care with respect to use and administration of drugs); *Karasik v. Bird*, 470 NYS2d 605-608 (A.D. 1 Dept. 1984) (in wrongful death case based on medical malpractice, pharmacologist competent to testify to effect of drugs); *Pratt v. Stein*, 444 A2d 674, 706 (Pa. Super. 1982) (pharmacologist qualified to testify in medical malpractice case that administration of drug was below standard of medical care). But see *Rodriguez v. Jackson*, 574 P2d 481 (Ariz. App. 1978) (pharmacologist not competent to testify to physician's deviation from medical standard of care); *Bell v. Hart*, 516 S2d 562 (Ala. 1987) (pharmacist not competent to testify in medical malpractice case that administration of drug was below standard of medical care); *Young v. Key Pharmaceuticals*, 770 P2d 182, 190 (Wash. 1989) (physician's standard of care regarding prescription of medication not within the scope of competence of pharmacist).

Where the expertise of the pharmacologist or other non-physician expert does not wholly overlap with a physician on the specific standard of care at issue, they are not competent to state that the standard was breached, but their testimony may nevertheless be relevant and admissible for a more limited purpose. See *Goodman v. Lipman*, 197 Ga. App. 631-634 (399 SE2d 255) (1990); *Jordan v. Santa Fe Engineering*, 198 Ga. App. 600, 602-603 (402 SE2d 304) (1991).

alleged negligent act or omission. *Milligan,* supra at 172. If the affidavit of a non-physician expert is relied upon to satisfy the requirements of OCGA § 9-11-9.1 (a) in a medical malpractice action against a physician, the affidavit must contain evidence sufficient to show that the affiant is competent to testify that the defendant physician deviated from the standard of medical care applicable to at least one negligent act or omission alleged in the complaint. This requires that the affidavit contain evidence showing that at least one standard of medical care placed in issue by the allegations of the complaint is based not in part but wholly on an area of expertise mutually shared by the affiant with physicians.

The affidavit of the pharmacologist was sufficient under the facts of this case because his conclusions as to the standard of medical care in prescribing certain drugs under certain assumed conditions are based wholly on the body of scientific knowledge mutually shared by pharmacologists with physicians. However, satisfaction of the pleading requirements of OCGA § 9-11-9.1 does not mean that the testimony of the pharmacologist alone would be sufficient to carry the evidentiary burden at trial to establish the physicians actually deviated from the specific standard of medical care addressed in the affidavit, or to establish that any such deviation caused the alleged injuries. This is so because, in giving his opinion in the affidavit, the pharmacologist is allowed to assume as true certain hypothetical facts relating to the medical condition of the patient when the drugs were prescribed. See *Druckman,* supra at 322. Proof of these essential facts may raise other medical issues and standards of care involving diagnosis and treatment beyond the expertise of a pharmacologist. "The purpose of OCGA § 9-11-9.1 is to reduce the number of frivolous malpractice suits being filed, not to require a plaintiff to prove a prima facie case entitling him to recover and capable of withstanding a motion for summary judgment before the defendant need file his answer." *0-1 Doctors,* supra at 288; *Druckman,* supra at 322. The affidavit contained sufficient evidence of overlapping expertise as to a relevant standard of medical care to satisfy the pleading requirements of OCGA § 9-11-9.1, and accomplish the purpose of the statute to reduce frivolous professional malpractice suits by requiring the plaintiff to show up front by expert testimony that she has some evidence of malpractice. *Gillis v. Goodgame,* 199 Ga. App. 413, 416-417 (404 SE2d 815) (1991), rev'd on other grounds, 262 Ga. 117 (414 SE2d 197) (1992). Accordingly, the trial court erred by finding the affidavit was insufficient and dismissing the complaint.

I am authorized to state that Judge Pope, Judge Beasley and Judge Cooper join in this dissent.

DECIDED MARCH 19, 1992 —
RECONSIDERATION DENIED APRIL 2, 1992 — 

*Roger C. Plichta,* for appellant.
*Sullivan, Hall, Booth & Smith, Rush S. Smith, Jr., Michael A. Pannier,* for appellees.